# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| RODNEY HUTCHINSON, | : | |
| Petitioner | : | No. 1:06-cr-173 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Respondent | : | |

## MEMORANDUM

Pending before the Court is Petitioner Rodney Hutchinson's motion to vacate, modify, or correct his sentence pursuant to 28 U.S.C. § 2255.[1] (Doc. No. 1561.) The motion is now ripe, and for the reasons that follow, the Court will deny the motion.

**I.   BACKGROUND**

On May 3, 2006, an indictment was returned against multiple defendants, including Petitioner, charging them with the manufacture and distribution of approximately 1,000 kilograms of marijuana. (Doc. No. 8.) An arraignment hearing was held for Petitioner on May 16, 2006, at which Petitioner entered a not guilty plea. (Doc. No. 37.) At that time, Federal Public Defender Thomas A. Thornton was appointed to represent Petitioner. (Doc. No. 40.)

On May 31, 2006, a superseding indictment was returned against Petitioner and other defendants. (Doc. No. 59.) Petitioner was charged with: conspiracy to distribute and possess

---

[1] On November 4, 2010, the Court issued Petitioner a Miller/Mason notice with instructions that failing to file the notice of election within 45 days would result in the Court ruling on the petition as captioned. (Doc. No. 1564.) Petitioner filed a memorandum in support of his § 2255 motion (Doc. No. 1567) on December 2, 2010, but never filed a completed notice of election. Thereafter, on December 23, 2010, the Court ordered that a copy of Petitioner's motion (Doc. No. 1561) and his memorandum in support (Doc. No. 1567) be served on the Government. (Doc. No. 1569.)

with intent to distribute 1,000 kilograms or more of marijuana in violation of 21 U.S.C. § 846 (Count I); conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h)(2) (Count II); and criminal forfeiture (Count X). (Id.) On June 20, 2006, Petitioner entered a plea of not guilty to the superseding indictment. (Doc. No. 349.)

On May 26, 2006, Petitioner filed a motion to suppress evidence seized after a traffic stop. (Doc. No. 46.) A hearing addressing Petitioner's detention and his motion to suppress was held on August 15, 2006. Petitioner's motion for release was denied, and the Court took the motion for suppression under advisement. On January 18, 2007, the Court issued an order denying Petitioner's motion to suppress. (Doc. No. 660.)

On February 2, 2007, Attorney Arthur Gutkin entered an appearance on behalf of Petitioner. (Doc. No. 682.) Thereafter, on February 14, 2007, Attorney Thornton filed a motion to withdraw from his representation of Petitioner. (Doc. No. 693.) In his motion, Attorney Thornton noted that Petitioner had retained Attorney Gutkin, and that the Federal Public Defender's representation was no longer needed in the matter. (Id.) The Court granted Attorney Thornton's motion to withdraw. (Doc. No. 694.)

On May 9, 2007, a second superseding indictment was returned against Petitioner and other defendants. (Doc. No. 866.) Petitioner was charged with: being at the center of a conspiracy to distribute and possess with intent to distribute 1,000 kilograms or more of marijuana (Count I); conspiracy to commit money laundering (Count II); and criminal forfeiture (Count VI). (Id.) An arraignment hearing was held on May 29, 2007, at which Petitioner entered a not guilty plea. (Doc. No. 914.)

On December 12, 2007, Attorney Gutkin filed a motion to withdraw his representation of

Petitioner. (Doc. No. 1290.) In his motion, Attorney Gutkin noted that Petitioner had instructed Gutkin to file a motion to suppress evidence and an action against the Government for vindictive prosecution. (Id.) Attorney Gutkin further stated that he would not file such motions because they lacked sufficient factual evidence. (Id.) The Court held a hearing on the motion to withdraw on December 20, 2007, at which the Court granted Attorney Gutkin's motion to withdraw and appointed Attorney William Fetterhoff to represent Petitioner. (Doc. Nos. 1305, 1318.)

On March 19, 2008, Petitioner entered into a plea agreement with the Government, in which he agreed to plead guilty to Counts I and II of the second superseding indictment and to the entry of an order of forfeiture. (Doc. No. 1373.) A plea hearing was held on April 10, 2008, at which Petitioner pleaded guilty to Counts I and II of the second superseding indictment. (Doc. No. 1396.) The Court conducted a colloquy with Petitioner, found that Petitioner was acting knowingly and voluntarily, and accepted the guilty plea. (Doc. No. 1507 at 25-27, 35.)

On July 7, 2008, Petitioner filed a letter with the Court which stated the following:

> I accept responsibility for actively participating in a conspiracy to distribute and posses [sic] with intent to distribute 219 pounds of marijuana. The marijuana originated in Tucson, Arizona[,] and was picked up by couriers acting at my direction. Based on the complexity of this case, I accept that 400kg-700kg would be appropriate or would be foreseeable to me. However, there were a lot of other conspiracies that was [sic] going on within this conspiracy that I should not be held responsible for, because the couriers that I found for other people was [sic] also working for Abraham Perez and others. As to how this conspiracy started or how Mac George met Abraham Perez, it is beyond my comprehension because that was before I came to this country. On the other hand, what Mac George did or got caught with in this conspiracy had nothing to do with me. Mac George has never worked for me or act [sic] on my direction at anytime [sic]. With that being said, everybody was working for Mac George and Tallman. My involvement in this marijuana distribution

3

> scheme was a terrible mistake which I greatly regret, especially since
> it has cause [sic] and continues to cause so much pain and hardship
> for my wife, children and others. Now that I have seen how serious
> this offense is and the impact it has on me and my family, I will never
> again in my life be engaged in any type of criminal activity. I am
> sincerely sorry and accept full responsibility for my actions.

(Doc. No. 1437.) The letter was signed by Petitioner.

On August 8, 2008, Petitioner filed a sentencing memorandum, in which he stipulated, inter alia, that: (1) the amount of marijuana attributable to Petitioner should be 1,000 to 3,000 kilograms; (2) Petitioner should receive an enhancement for possession of a gun; and (3) Petitioner should receive a deduction for acceptance of responsibility. (Doc. No. 1481.) On August 28, 2008, the Court sentenced Petitioner to a term of 210 months, consisting of a sentence of 110 months on Count I of the second superseding indictment, and 100 months on Count II of the second superseding indictment to be served consecutively to the sentence on Count I. In addition, the Court ordered supervised release for three years on both counts, to be served concurrently; a $100 special assessment on each count; and a $500 fine on each count. The Court then granted the Government's motion to dismiss all other counts against Petitioner.

On August 29, 2008, Petitioner filed a notice of appeal. (Doc. No. 1491.) His counsel, Attorney Fetterhoff, also filed a motion to withdraw as counsel and a brief in support of that motion pursuant to Anders v. California, 386 U.S. 738, 744 (1967). (Doc. No. 1520 at 2.) On review, the United States Court of Appeals for the Third Circuit found that Petitioner's appeal was frivolous because, although he challenged this Court's denial of his motion to suppress drug evidence, "that issue is moot because [he] ultimately stipulated that the amount of marijuana involved in the conspiracy was 1,000 to 3,000 kilograms." (Id. at 4-5.) After reviewing Petitioner's plea colloquy, the appellate court found that Petitioner entered his guilty plea

4

voluntarily and knowingly.  (Id. at 5.)  Finding all other arguments raised by Petitioner were frivolous, the Third Circuit affirmed Petitioner's conviction and sentence.

On November 2, 2010, Petitioner filed his motion to vacate.  (Doc. No. 1561.)  On March 14, 2011, the Court ordered that an evidentiary hearing be held regarding Petitioner's ineffective assistance of counsel claims raised in regard to his representation by Attorney Fetterhoff.  (Doc. No. 1592.)  The evidentiary hearing was held on June 27, 2011, and the Government and Petitioner subsequently filed supplemental briefing.

## II.  STANDARD OF REVIEW

In order to survive, a collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  The first Strickland prong requires a petitioner to "establish first that counsel's performance was deficient."  Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001).  This prong requires Petitioner to show that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment.  Id. (citation omitted).  In this way, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  Id. (citing Strickland, 466 U.S. at 688).  However, "[t]here is a 'strong presumption' that counsel's performance was reasonable."  Id.

Under the second Strickland prong, Petitioner "must demonstrate that he was prejudiced by counsel's errors."  Jermyn, 266 F.3d at 282 (citation omitted).  This prong requires Petitioner to show that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Id. (quoting Strickland, 466 U.S. at 694.) "Reasonable probability" is defined as "'a probability sufficient to undermine confidence in the

5

outcome.'" Id. (quoting Strickland, 466 U.S. at 694). "A court can choose to address the prejudice prong before the ineffectiveness prong and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006).

### III. DISCUSSION

Petitioner originally based his § 2255 motion on seven different theories of ineffective assistance of counsel, regarding work performed by Attorney Thornton on the motion to suppress evidence, and work performed by Attorney Fetterhoff at the sentencing stage and on appeal. (Doc. No. 1561.) The Court ordered that an evidentiary hearing be held regarding Petitioner's claims with respect to Attorney Fetterhoff. (Doc. No. 1592.) At the evidentiary hearing, Petitioner's counsel narrowed the issues presented with respect to Attorney Fetterhoff to three claims regarding his representation. (Doc. No. 1612 at 3-4.) The Court will discuss each claim against Attorney Thornton and Attorney Fetterhoff in turn.

#### A. Attorney Thornton's alleged failure to adequately argue in support of Petitioner's motion to suppress evidence

Petitioner has alleged that his first counsel, Federal Public Defender Thornton, was ineffective for failing to present evidence in support of the motion to suppress evidence. (Doc. No. 660.) Petitioner further argues that Attorney Fetterhoff was ineffective for failing to pursue the issue on appeal. As support, Petitioner has submitted his own "Affidavit of Truth." (Doc. No. 1567-1.)

An ineffective assistance claim may be based on an attorney's failure to adequately represent a defendant seeking to have evidence seized in violation of the Fourth Amendment excluded at trial. Kimmelman v. Morrison, 477 U.S. 365, 378 (1986). However, a defendant

6

must still meet Strickland's standard of incompetence and prejudice. In this case, the motion to suppress dealt with a drug stop in which a police officer using a drug-sniffing dog found marijuana in Petitioner's car. Relying on his own affidavit as evidence, Petitioner argues that Attorney Thornton was ineffective for failing to show the following facts, which are now attested to in an affidavit submitted by Petitioner:

> 8. As the Officer . . . [led] the canine by a leash around the perimeter of the said vehicle, he carried in his hand a blue colored ball reminiscent of a "dog-toy["]; . . .
>
> 9. The Officer began the perimeter walk at the rear of the rental vehicle – i.e. at the trunk – and moved toward the front along the passenger side of the vehicle, across the front end, and toward the rear again along the driver's side of the vehicle;
>
> 10. When the Officer, not the canine, came to the open driver's side window of the vehicle he halted the dog;
>
> 11. At the open window, the Officer extended his arm into the vehicle – breaking the barrier separating the exterior from the interior – and while shaking the "dog-toy," made a clucking noise with his tongue, enticing the canine to enter the vehicle;
>
> 12. The canine did as instructed and leaped into the vehicle through the open window of the driver's side door, beginning an interior search;
>
> 13. At no point in time, did the Officer's canine alert to any illegal narcotics during the perimeter search of the vehicle, or prior to jumping into the vehicle at the Officer's direction[.]

(Doc. No. 1567-1.)

The Court need not reach the issue of whether this "evidence" caused Petitioner prejudice, because it is inconsistent with the testimony that Petitioner gave at the suppression hearing. At that hearing – held on August 15, 2006 – Petitioner testified on direct as follows:

> Q. Did you see [the police officer] – why don't you describe for the

> Court exactly what he did do then.
>
> A. He went up to the car and get his dog and brought the dog up. I was sitting on the right-hand side of the road, so I didn't see exactly what the dog did because it was on the left-hand side.
>
> Q. Did he mention anything to you about seeing marijuana debris or residue on the front seat.
>
> A. Not to my knowledge.
>
> Q. Did you give him consent to search the car?
>
> A. No, sir.
>
> Q. After the dog was taken around the car, what did you see? What happened?
>
> A. The dog was in the car. I don't know if it's from the driver's side window or he opened the door. I can't recall what he did. But the dog was in the car.

(Doc. No. 1508 at 50-51.) It was not unreasonable for Attorney Thornton to fail to elicit facts at the suppression hearing that Petitioner only seems to have remembered nearly five years after the hearing took place. Accordingly, the § 2255 motion must be denied as to this claim of ineffective assistance.[2]

### B. Attorney Fetterhoff's alleged failure to advise Petitioner that his sentencing stipulation on drug quantity would have the effect of mooting his appeal of the suppression issue

Petitioner argues that Attorney Fetterhoff was ineffective for failing to advise him that stipulating to the drug quantity involved in the conspiracy would moot the provision of his

---

[2] Furthermore, it was not ineffective assistance for Attorney Fetterhoff to fail to pursue this issue on direct appeal. Notably, the Third Circuit upheld Petitioner's sentence on appeal but did not address the motion to suppress, finding that "issue [was] moot because Hutchinson ultimately stipulated that the amount of marijuana involved in the conspiracy was 1,000 to 3,000 kilograms." United States v. Hutchinson, 316 F. App'x 137, 139 (3d Cir. 2009).

8

conditional plea reserving his right to appeal the Court's denial of his motion to suppress. On May 26, 2006, Petitioner filed a motion to suppress evidence of 219 pounds of marijuana seized from a car that he was driving at the time of his arrest. (Doc. No. 46.) On January 18, 2007, the Court denied the motion to suppress. (Doc. No. 660.) When Petitioner later pleaded guilty, he reserved the right to appeal the Court's denial of his motion to suppress, pursuant to Federal Rule of Criminal Procedure 11(a)(2). (Doc. No. 1373 ¶ 11.) If Petitioner were to have prevailed on the appeal of the suppression ruling, he would have been permitted to withdraw his plea of guilty. (Id.; Fed. R. Crim. P. 11(a)(2).)

On August 18, 2008, Petitioner filed a sentencing memorandum, in which he stipulated that the "amount of marijuana attributable to [Petitioner] should be 1,000 to 3,000 kilograms." (Doc. No. 1481 ¶ 1.) Petitioner then appealed the suppression issue pro se, after Attorney Fetterhoff filed an Anders brief. The Third Circuit held that the suppression issue is moot, due to Petitioner's stipulation. United States v. Hutchinson, 316 Fed. App'x 137, 139 (3d Cir. 2009).

Petitioner testified at the evidentiary hearing that Attorney Fetterhoff did not advise him that the stipulation would have the effect of mooting an appeal of the suppression issue, and that he did not independently understand that the stipulation would moot an appeal on the issue. (Doc. No. 1612 at 10-11, 15-16.) Attorney Fetterhoff admits that he did not specifically tell Petitioner that the stipulation would have the effect of mooting an appeal of the suppression issue; however, he testified that he discussed the suppression issue concurrently with the stipulated amount of marijuana. (Id. at 64-65.) Attorney Fetterhoff testified that he believed that Petitioner understood that the stipulation would moot an appeal of the suppression order because Attorney Fetterhoff explained that the automobile stop was not material to the case, and that

9

"219 pounds was a drop in the bucket." (Id. at 65-67.) Attorney Fetterhoff testified that he spoke with Petitioner about the stipulations on numerous occasions, and that, after some initial hesitation, Petitioner ultimately agreed to the stipulations. (Id. at 69-71.) Petitioner admits that he ultimately agreed to the stipulation on the amount of marijuana. (Id. at 22.)

Petitioner argues that Attorney Fetterhoff failed to uphold his duty to "consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of prosecution" by not specifically advising Petitioner that the drug quantity stipulation would moot his appeal right as to the suppression issue. (Doc. No. 1616 at 16 (quoting Strickland, 466 U.S. at 688).) The Government argues, however, that Petitioner has not made out a case under either Strickland prong, and that Attorney Fetterhoff's representation was reasonable throughout all stages of the case. (Doc. No. 1613 at 15.) The Government argues that the suppression issue that Petitioner hoped to appeal was without merit "and paled in comparison to the reduction of almost 50% in [Petitioner's] sentence that Fetterhoff was able to obtain for [Petitioner] through his able plea and sentencing negotiations." (Id. at 17.)

Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms; however, "[t]here is a 'strong presumption' that counsel's performance was reasonable." Jermyn, 266 F.3d at 282 (citing Strickland, 466 U.S. at 688). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

Therefore, the Court must evaluate Attorney Fetterhoff's conduct from his point of view

at the time. Attorney Fetterhoff testified that he believed that Petitioner understood that the stipulation would moot an appeal of the suppression issue, as he explained that the automobile stop was not material to the case, and that "219 pounds was a drop in the bucket." (Doc. No. 1612 at 65-67.) Attorney Fetterhoff testified that he told Petitioner that the suppression issue was moot, though not at the time that he advised Petitioner to stipulate as to the marijuana amount:

> [The suppression issue] did not matter. It was not going to affect the sentencing guidelines and I told him that repeatedly that it was moot and that because it was such a small amount and because the swing under the guidelines was either 1,000 to 3,000, or as the presentence report recommended 3,000 to 10,000, number one, the 219 was a matter of indifference, and number two, more importantly if we entered an agreement with the U.S. attorney to recommend the lesser amount to the court, 1,000 to 3,000, it would directly benefit his sentence.

(Id. at 64.)

Although Attorney Fetterhoff could have perhaps made the issue more clear to Petitioner, the Court must make every effort to "eliminate the distorting effects of hindsight." See Strickland, 466 U.S. at 689. Given the strong presumption that counsel's performance was reasonable, and the fact that Attorney Fetterhoff was able to reduce Petitioner's sentence considerably through plea and sentencing negotiation, the Court cannot find that Attorney Fetterhoff's representation fell below an objective standard of reasonableness by not specifically advising Petitioner that the stipulation as to drug quantity would have the effect of mooting an appeal of the suppression issue. Accordingly, the § 2255 motion must be denied as to this claim of ineffective assistance.

### C. Attorney Fetterhoff's alleged failure to conduct an adequate presentence investigation

Petitioner contends that Attorney Fetterhoff "failed to conduct a reasonably adequate pre-sentencing investigation when he failed to interview [P]etitioner's co-defendants and ascertain vital information pertaining to [P]etitioner's culpability within the conspiracy." (Doc. No. 1561 at 28.) Petitioner argues that Attorney Fetterhoff did not conduct an adequate investigation into the issues of drug quantity and the firearm enhancement prior to recommending that Petitioner enter into a stipulation on those issues. (Doc. No. 1616 at 17.) First, as to the drug quantity stipulation, Petitioner argues that Attorney Fetterhoff's decision not to investigate Petitioner's allegations that he was responsible for less than 1,000 to 3,000 kilograms was unreasonable because the investigation could have enabled Petitioner to present a defense on the drug quantity issue at a sentencing hearing, potentially resulting in a reduction in his Guideline range. (Id. at 17-18.) As to the firearm enhancement issue, Petitioner argues that it was unreasonable for Attorney Fetterhoff to recommend stipulation on the firearm enhancement without investigating Petitioner's assertion that he had not used a firearm in furtherance of drug trafficking, and that this conduct prejudiced him, as it resulted in a two-level increase in the offense level for purposes of the Guideline calculation. (Id. at 19-20.)

At the evidentiary hearing, Attorney Fetterhoff testified that he discussed Petitioner's concerns about the drug quantity with Petitioner, but that he believed that investigation of those issues would be futile as "none of that was . . . likely to get us into a situation where we had sufficient evidence to contradict the government and to contradict the presentence report and persuade the court that [the amount of marijuana attributable to Petitioner] was below 1,000 kilos." (Doc. No. 1612 at 74.) Regarding the firearm enhancement, Fetterhoff admits that he did

12

not investigate the matter beyond reading the Government's proffered evidence, because he believed that co-defendant Dawson's testimony about an episode where Petitioner allegedly threatened Dawson with a firearm was "fairly lurid" and was corroborated by testimony of co-defendant Williamson. (Id. at 75-76.)

"In the context of ineffective assistance based on counsel's failure to investigate, the court must determine whether counsel exercised 'reasonable professional judgment.'" Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005) (citing Wiggins v Smith, 539 U.S. 510, 522-23 (2003)). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 690-691.

Here, Attorney Fetterhoff's decided not to interview witnesses with respect to the drug quantity and the firearm issue based on his evaluation of the Government's evidence, Petitioner's credibility, and his belief that such investigation would be futile. Attorney Fetterhoff's decision was made after weighing the likelihood of success in challenging these two issues against the countervailing sentencing benefit of Petitioner's acceptance of responsibility. (See Doc. No. 1612 at 84-85.) Applying the requisite "heavy measure of deference to counsel's judgments," the Court finds that Attorney Fetterhoff exercised reasonable professional judgment in his decision not to further investigate Petitioner's claims with respect to the drug quantity stipulation and firearm enhancement stipulation. Accordingly, the § 2255 motion must be denied as to this claim of ineffective assistance.

### D. Attorney Fetterhoff's alleged failure to inform Petitioner that he would automatically be deported if he pleaded guilty

Petitioner contends that Attorney Fetterhoff was ineffective for failing to advise him prior to entering a guilty plea that he would be deported as a result of the conviction. Petitioner testified at the evidentiary hearing that Attorney Fetterhoff did not advise Petitioner prior to signing the plea agreement that he would be deported with certainty. (Doc. No. 1612 at 39.) Petitioner notes, however, that the sentencing memorandum that Attorney Fetterhoff filed stated that Petitioner "will be deported immediately upon completion of his sentence." (Doc. No. 1481 at ¶ E.) At the evidentiary hearing, Attorney Fetterhoff testified that he advised Petitioner that the likelihood of deportation would be "very high." (Doc. No. 1612 at 60.) Attorney Fetterhoff testified that he did not tell Petitioner that deportation was certain because "the contingencies of life are various and they're measured by different degrees." (Id.)

In assessing counsel's performance at sentencing, "the constitutionally required performance is that of complete disclosure in conjunction with full advice and counsel regarding the client's potential sentencing exposure, options regarding plea bargains, and the potential consequences with respect to each option." Boyd v. Waymart, 579 F.3d 330, 353 (3d Cir. 2009). In Padilla v. Kentucky, the United States Supreme Court held that competent counsel has a duty to give clear advice regarding the deportation consequences of a guilty plea. 130 S. Ct. 1473, 1483 (2010). In Padilla, the petitioner claimed that his counsel failed to advise him of the possibility of deportation, and told him that he "did not have to worry about immigration status since he had been in the country so long." Id. at 1478 (internal citation and quotation marks omitted). The Supreme Court explained that removal is "practically inevitable" when a non-citizen commits a removable offense, and that "counsel must inform her client whether his plea

14

carries a risk of deportation." Id. at 1480, 1486.

The Third Circuit recently held that the holding in Padilla is retroactively applicable on collateral review. United States v. Orocio, 645 F.3d 630, 641 (3d Cir. 2011). In Orocio, the petitioner alleged that his counsel did not advise him of the "near-certain removal consequences of pleading guilty to a controlled substance offense." Id. at 642. The Third Circuit held that, like counsel in Padilla, who affirmatively misled a defendant regarding the deportation consequences of his guilty plea, petitioner Orocio's counsel was constitutionally deficient for failing to advise him of the adverse immigration consequences of his guilty plea. Id. at 642-43.

Neither Padilla nor Orocio require an attorney to advise his client of an absolute certainty of deportation at the plea stage. Rather, the Third Circuit explained that, under Padilla, "the failure of defense counsel to warn a defendant that a plea would make the defendant eligible for removal is a constitutional defect in representation that satisfies the first prong of the Strickland test." Id. at 641 (emphasis added). In this case, unlike in Padilla or Orocio, Petitioner's counsel did advise him of the possibility that he would be deported if he pleaded guilty. Attorney Fetterhoff testified that he advised Petitioner of a high probability that he would be deported. (Doc. No. 1612 at 60.) In light of the presumption that counsel is effective, the Court cannot find that Attorney Fetterhoff was ineffective for failing to advise Petitioner that he would be deported with certainty if he pleaded guilty. Accordingly, the § 2255 motion must be denied as to this claim of ineffective assistance.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate will be denied. An order consistent with this memorandum follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODNEY HUTCHINSON, | : | |
|     Petitioner | : | No. 1:06-cr-173 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| UNITED STATES OF AMERICA, | : | |
|     Respondent | : | |

## **ORDER**

**AND NOW**, this 24th day of October 2011, upon consideration of Petitioner's motion to vacate (Doc. No. 1561), and for the reasons more fully set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT** Petitioner's motion to vacate is **DENIED**. The Clerk of Court is directed to close this case.

                                                  S/ Yvette Kane
                                                Yvette Kane, Chief Judge
                                                United States District Court
                                                Middle District of Pennsylvania